IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GWINNETT COUNTY SCHOOL
DISTRICT,
   Plaintiff,

   v.

A.A., B.A., and D.A.,
   Defendant.

CIVIL ACTION FILE
NO. 1:09-CV-445-TWT

ORDER

This is an action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. It is before the Court on the Defendants' Motion for Summary Judgment [Doc. 46] and the Plaintiff's Motion for Summary Judgment [Doc. 74]. Both motions are granted in part and denied in part.

I. Introduction

   A.   IDEA Framework

The Individuals with Disabilities Education Act ("IDEA") provides federal assistance to states that provide a free appropriate public education ("FAPE") to children with disabilities. 20 U.S.C. § 1412(a)(1)(A). States must identify children in need of special education and develop an "individualized education program" ("IEP") that meets the requirements of the Act. The IEP should allow disabled

children to be educated in the least restrictive environment. In other words, children with disabilities should be educated with children who are not disabled except when "the nature or severity of the disability . . . is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. 1412(a)(5).

### B.   Factual Background

In 1994, A.A. was evaluated by the Waterbury School District in Connecticut. She was four years old. The evaluator reported that A.A. had significant difficulties with language processing that interfered with her performance in school. The evaluator also reported that A.A. did not interact well with her peers. She was given an "uncategorical" eligibility under the IDEA. The Waterbury School District prepared an IEP on March 11, 1994, which provided for special education, speech and language services, occupational therapy, and physical therapy. The IEP recommended that A.A. have "opportunities for integration with typical age appropriate peers." (J. Ex. 1, p. 32.)

Later that year, A.A. moved to Atlanta, Georgia. Based on A.A.'s Connecticut test scores, the Gwinnett County School District determined that she was significantly developmentally delayed (SDD) and speech-language impaired. On August 22, 1994, the School District developed an IEP for A.A.'s pre-kindergarten year. She was placed

in a self-contained SDD class for ten hours per week. A.A.'s parents were not satisfied with the learning environment. In January 1995, they requested that she be removed from the SDD program.

    A.A. attended a private school for kindergarten. In December 1995, A.A.'s parents took her to the Emory Psychological Center for a neuropsychological evaluation, where she was tested by an Emory graduate student under the supervision of a licensed clinical psychologist. The examiner used the McCarthy Scales of Children's Abilities and the Wechsler Intelligence Scale for Children - III (WISC-III). Based on these tests, the examiner concluded that A.A. functioned in the mildly mentally retarded range of intelligence. The examiner also said that A.A. exhibited significant deficits in adaptive behavior and had difficulty with communication, daily living skills, and socialization skills. (See Mot. to Submit Add'l Evidence, Doc. 72, Ex. 8.) A.A.'s parents gave the Gwinnett County School District IEP team her evaluation report. However, neither the IEP team nor A.A.'s parents had a complete copy of the report. A missing page stated that there were fluctuations in A.A.'s test data that warranted viewing the findings tentatively. On the missing page, the examiner recommended that A.A. continue in regular education classes at her private school but noted that A.A.'s parents may wish to "consider placement in a school

program for children with generalized learning disabilities and/or educable mental retardation" if A.A. continued to struggle academically. (Id.)

A.A. returned to the Gwinnett County School System as a first-grader in August 1996. That fall, the School District prepared a "Speech-Language Impaired Eligibility Report." The report relied on the Emory evaluation and concluded that A.A. was no longer language impaired. A.A. was placed in an intellectually disabled program for 24.5 hours each week and an adaptive education program for 30 minutes each week. The IEP team met regularly from 1997 to 2006 to assess A.A.'s academic progress and prepare IEPs for A.A. Each year, the School District placed A.A. in the intellectually disabled program. Most years, the IEP team suggested mainstreaming A.A. for a few hours each week. The team consistently relied on the Emory report and never recommended further psychological testing for mental impairment or autism.

In Spring 2006, A.A. told her mother after a community skills class, "I am not scraping plates the rest of my life." Shortly thereafter, A.A.'s parents requested a change of curriculum. That May, A.A.'s parents brought an advocate to the annual IEP meeting. The advocate requested a comprehensive psychological evaluation of A.A. and suggested autism as an eligibility. In August, the School District's psychologist evaluated A.A. and concluded that A.A. had autism and a speech-

language impairment. The psychologist also said that A.A. functioned in the low-average to average range of intelligence.

Thereafter, A.A. continued to take classes on the technical diploma track. Her teachers reported she was passing the classes. However, A.A. became frustrated and anxious because she was academically behind the other students. Her parents requested academic remediation at the Lindamood Bell Center. The School District denied this request and said, "We cannot go back and fix what occurred." (Transcript of Administrative Hearing at 1612-13.)

On November 28, 2007, A.A.'s parents requested a due process hearing against the Gwinnett County School District seeking reimbursement and other compensatory payments for violations of A.A.'s rights under the IDEA. The state administrative law judge heard testimony and arguments from both parties and made findings of fact and conclusions of law based on this record. He determined that the Gwinnett County School District had violated A.A.'s rights by failing to provide her a FAPE from 1996 to 2006. He awarded A.A. $55,626.90 in reimbursement and ordered private placement at Lindamood Bell and the Cottage School at public expense. The Gwinnett County School District now seeks to have that decision set aside by this Court.

II. Standard of Review

A district court may decide an IDEA case by summary judgment even where facts are in dispute, based on the preponderance of the evidence. Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys., 349 F.3d 1309, 1313 (11th Cir. 2003). Thus, the usual summary judgment rules under Rule 56 of the Federal Rules of Civil Procedure do not apply. Id. In reviewing an administrative law judge's decision, "due weight" should be given to the determinations made during the administrative hearing. Board of Educ. of Hendrick Hudson Central Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 206 (1982). The court must consider the administrative findings of fact, but has the discretion to accept or reject them. Doe v. Alabama State Dept. of Educ., 915 F.2d 651, 657 n.3 (11th Cir. 1990); Jefferson County Bd. of Educ. v. Breen, 853 F.2d 853, 857 (11th Cir. 1988).

III. Discussion

If a parent disagrees with the IEP or believes that his child has been denied a FAPE, he is entitled to an administrative hearing. 20 U.S.C. § 1415(f)(1)(A); O.C.G.A. § 20-13-41(a)(1). The IDEA requires parents to request a hearing "within two years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(f)(3)(C). The School District says that the Administrative Law Judge erred in considering all of A.A.'s

claims regarding events occurring from August 16, 1996 to 2006. The Court agrees in part.

The two-year statute of limitations does not bar A.A.'s claim that the School District failed to properly diagnose her and that, if it had, a proper diagnosis may have been made earlier and appropriate educational programming may have been provided. The Eleventh Circuit addressed a similar issue in <u>Draper v. Atlanta Independent School System</u>, 518 F.3d 1275 (11th Cir. 2008). Jarron Draper entered the Atlanta Independent School System as a second-grader in 1994. He struggled academically, and in 1998 the school system evaluated him for learning disabilities. The evaluation showed that he had an I.Q. of 63, which placed him in the below-average range of intelligence. Based on this evaluation, he was placed in a classroom for children with mild intellectual disabilities. He remained in the restrictive classroom until 2003, when he was reevaluated by the school district. The 2003 evaluation revealed that Draper did not have mild intellectual disabilities but did have dyslexia. The IEP team modified his educational program, but his parents were still displeased with his progress. In 2004, they requested a due process hearing. The administrative law judge and the district court found that the school district violated the IDEA. On appeal, the school system argued that Draper's complaint about his placement in the restrictive classroom between 1999 and 2002 was barred by the two-year statute of

limitations. The Eleventh Circuit rejected this argument and held that "Draper's family did not have the facts necessary to know that Draper had been injured by his misdiagnosis and misplacement until they received the results of his evaluation in 2003." Id. at 1288. Here, like in Draper, A.A.'s parents did not have the facts necessary to know she had been injured until they received the results of her 2006 evaluation, which showed she had autism and was not mentally impaired. Accordingly, this claim is not barred by the two-year statute of limitations.

The Court accepts the finding of the ALJ that the School District violated the Act by failing to provide A.A. with a remedial educational program once she was diagnosed as autistic. This finding is supported by a preponderance of the evidence. However, the ALJ erred in not applying the two-year statute of limitations to A.A.'s remaining claims regarding the School District's failure to comply with the Act prior to two years before A.A.'s hearing request. These include substantive claims regarding the School District's failure to provide speech and language services and procedural claims regarding the absence of a regular education teacher at the IEP meetings, the lack of parental involvement, and inappropriate reliance on the Emory evaluation. A.A.'s parents should have known about these actions when they occurred, and therefore cannot raise these claims now.

The ALJ also erred in holding that the Gwinnett County School District violated the Act from 1996 to 2006 by placing A.A. in a program for mentally retarded children rather than in a program for autism. A.A. was not diagnosed with autism in 1994 when she was evaluated by the Waterbury Connecticut School District. The ALJ agrees that the Gwinnett County School District properly placed A.A. in the SDD program in 1994. She was not diagnosed with autism by the Emory evaluation which concluded that she had mild mental retardation. The School District was required to consider that diagnosis in preparing the IEPs for the following years. The School District did not deprive A.A. of a FAPE until a diagnosis of autism should have been made. The ALJ provides no basis for his conclusion that A.A. was misidentified and misplaced for more than 10 years of her educational programming. If the record does not contain evidence as to when the School District should have properly diagnosed A.A., then the School District is only liable from the date in 2006 when A.A.'s advocate first suggested a diagnosis of autism. This Court is required to give "due weight" to the decision of the ALJ. See Walker County School District v. Bennett, 203 F.3d 1293, 1297 (11th Cir. 2000). The Court cannot determine what effect, if any, the error in applying the statute of limitations had upon the compensatory award of the ALJ. Therefore, the appropriate remedy in this case is to remand the case to the ALJ for reconsideration of the award.

## IV. Conclusion

For the reasons stated above, the Defendants' Motion for Summary Judgment [Doc. 46] and the Plaintiff's Motion for Summary Judgment [Doc. 74] are GRANTED in part and DENIED in part. This case is remanded to the Administrative Law Judge for reconsideration consistent with this Order.

SO ORDERED, this 16 day of July, 2010.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge